**DOCKET NO. 13-30373**
**IN UNITED STATES DISTRICT COURT FOR THE**
**FIFTH CIRCUIT COURT OF APPEAL**

**KENT RADER,**

*Plaintiff-Appellee*

**V.**

**MISTY COWART; PAT BOOK, INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITY AS WARDEN OF CATAHOULA CORRECTIONS CENTER;**
**LIEUTENANT BOOK; LASALLE MANAGEMENT COMPANY, L.L.C.;**
**JAMES GLEN KELLY, INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITY AS SHERIFF OF CATAHOULA PARISH,**

*Defendants-Appellants*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORIGINAL BRIEF FILED ON BEHALF OF**
**DEFENDANTS-APPELLANTS,**
**LASALLE MANAGEMENT COMPANY, L.L.C., WARDEN PAT BOOK,**
**LIEUTENANT BOOK, SHERIFF JAMES GLEN KELLY**
**AND MISTY COWART**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**USDC 1:09-cv-01872**
**JUDGE JAMES T. TRIMBLE, JR. AND MAG. JUDGE JAMES D. KIRK**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Respectfully submitted:
PROVOSTY, SADLER, deLAUNAY
FIORENZA & SOBEL, APC

By: /s/ H. Bradford Calvit
H. BRADFORD CALVIT (#18158)
bcalvit@provosty.com
934 Third Street, Suite 800
P.O. Drawer 1791
Alexandria, LA 71309-1791
P: 318/445-3631 F: 318/445-9377

ATTORNEYS FOR
DEFENDANTS-APPELLANTS
LASALLE MANAGEMENT COMPANY,
L.L.C., WARDEN PAT BOOK, LIEUTENANT
BOOK, SHERIFF JAMES GLEN KELLY
and MISTY COWART

KENT RADER                                          DOCKET NO. 13-30373

VS.                                          UNITED STATES DISTRICT COURT

L.P.N. MISTY COWART, ET AL        5TH CIRCUIT COURT OF APPEAL


## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed person(s) have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.


### A. PARTIES:

(1)    KENT RADER;

(2)    LASALLE MANAGEMENT COMPANY, L.L.C.;

(3)    WARDEN PAT BOOK;

(4)    LIEUTENANT BOOK;

(5)    SHERIFF JAMES GLEN KELLY;

(6)    MISTY COWART;

### B. OTHER INTERESTED PARTIES:

NONE.

## C.  **ATTORNEYS:**

(7)     TIMOTHY R. RICHARDSON, Attorney at Law, Law Firm of Usry, Weeks & Matthews, (New Orleans), 1615 Poydras Street, Ste 1250, New Orleans, Louisiana 70112; Office Phone: (504) 592-4600; Facsimile: (504) 592-4641; Attorney for JAMES GLEN KELLY;

(8)     JOHN CHRISTOPHER ALEXANDER, SR., Attorneys at Law, Alexander Law Firm, (Baton Rouge), 3751 Government St, Ste A, Baton Rouge, Louisiana 70806, Office Phone: (225) 761-9456; Facsimile: (225) 761-7899; Attorney for KENT RADER; and

(9)     H. BRADFORD CALVIT, Attorney at Law, Law Firm of Provosty, Sadler,     deLaunay, Fiorenza & Sobel, APC, (Alexandria), P .O. Drawer 1791, Alexandria, LA 71309-1791, Attorney for LASALLE MANAGEMENT COMPANY, L.L.C., WARDEN PAT BOOK, LIEUTENANT BOOK, SHERIFF JAMES GLEN KELLY, AND MISTY COWART.

> Respectfully submitted:
> PROVOSTY, SADLER, deLAUNAY
> FIORENZA & SOBEL, APC
>
> By: /s/ H. Bradford Calvit
> H. BRADFORD CALVIT (#18158)
> bcalvit@provosty.com
> 934 Third Street, Suite 800
> P.O. Drawer 1791
> Alexandria, LA 71309-1791
> P: 318/445-3631 F: 318/445-9377
> ATTORNEYS FOR
> DEFENDANTS-APPELLANTS
> LASALLE MANAGEMENT COMPANY,
> L.L.C., WARDEN PAT BOOK, LIEUTENANT
> BOOK, SHERIFF JAMES GLEN KELLY
> and MISTY COWART

## **STATEMENT REGARDING ORAL ARGUMENT**

Because of the narrow issues before the Court on this interlocutory appeal, and the completeness of the briefs by the parties, Appellants respectfully submit that oral argument will not be of benefit to the Court.  In the event that oral argument is ordered; however, Appellants respectfully urge the desire to participate.

# TABLE OF CONTENTS

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i-ii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v-viii

I.      Statement of Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

II.     Statement of Issues Presented For Review. . . . . . . . . . . . . . . . . . . . . . . 1

III.    Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-4

IV.     Statement of Facts Relevant to the Issue
        Submitted for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-10

V.      Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

VI.     Argument on Issue Preclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-17

VII.    Argument on Prescription. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-28

VIII.   Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

        Certificate of Service

        Certificate of Compliance

# TABLE OF AUTHORITIES

## STATUTES:

28 U.S.C. §636(b)(1)(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C.§1292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

F.R.C.P. Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,16

F.R.C.P. Rule 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,12,16

F.R.C.P. Rule 72(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Local Rule 56.2W. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## CASES:

Ashe v. Swenson,
    397 U.S. 436, 443, 90 S.Ct. 1189, 1194 (1970). . . . . . . . . . . . . . . . . . . 11,16

Barbarin v. Wal-Mart Stores,
    01-669 (La. App. 5 Cir. 11/27/01), 804 So.2d 116.. . . . . . . . . . . . . . . . . . . 22

Crowe v. Henry,
    43 F.3d 198, 203 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cruz v. Louisiana, Dept. of Public Safety and Corrections,
    528 F.3d 375 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Doe v. U.S. Dept. Of Justice,
    753 F.2d 1092, 1101 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Doucette v. Barthelemy,
    598 So.2d 600 (La. App. 4 Cir. 1992) and La.C.C.Art. 3492. . . . . . . . . . . 21

Elzy v. Robinson,
    868 F.2d 793 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Freeze v. Griffith,
    849 F.2d 172, 175 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Harrell v. Edwards,
    05-4002 (E.D. La. 2007), 2007 WL 734387.. . . . . . . . . . . . . . . . . . . . . 25,26

Harris v. Hegmann,
    198 F.3d 153 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

Herrera v. Millsap,
    862 F.2d 1157, 1159 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hirras v. National Railroad Passenger Corp.,
    10 F.3d 1142, 1144 (5th Cir. 1994),
    vacated on other grounds,
    512 U.S. 1231, 114 S.Ct. 2732 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Monumental Inc. Co.,
    365 F.3d 408 (5th Cir. 2004)
    cert denied, 543 U.S. 870, 125 S.Ct. 777, 160 L.Ed. 11 (2004).. . . . . . . . . 22

Jackson v. E. A. Conway Medical Center,,
    2009 WL 159732 (W.D. La. Jan. 22, 2009). . . . . . . . . . . . . . . . . 22,23,24,26

Jackson v. E. A. Conway Medical Center,
    2009 WL 2512846 (W.D. La. Aug. 17, 2009). . . . . . . . . . . . . . . . . . 22,23,26

Jackson v. Johnson,
    950 F.2d 263 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Kling Realty Co., Inc. v. Chevron USA, Inc.,
     575 F.3d 510 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Luckett v. Delta Airlines, Inc.,
     171 F.3d 295 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Lujan v. Defenders of Wildlife,
     504 U.S. 555, 112 S.Ct. 2130, 2137 (1992). . . . . . . . . . . . . . . . . . . . . . . . 14

McGregor v. Louisiana State University,
     3 F.3d 850 (5th Cir. 1993)
     cert. denied, 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994). . . . 21

National Organization for Women, Inc. v. Scheidler,
     510 U.S. 249, 114 S.Ct. 798, 803 (1994),
     citing Lujan v. Defenders of Wildlife,
     504 U.S. 555, 112 S.Ct. 2130, 2137 (1992). . . . . . . . . . . . . . . . . . . . . . . . 14

Pace v. Bogalusa City School Bd.,
     403 F.3d 272, 290 (5th Cir.)
     cert. den., 546 U.S. 933, 126 S.Ct. 416 (2005). . . . . . . . . . . . . . . . . . . . . . 11

Piotrowski v. City of Houston,
     51 F.3d 512, 516 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,24

RecoverEdge L.P. v. Pentecost,
     44 F.3d 1284, 1291 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Restrepo v. Fortunato
     556 So.2d 1362 (La.App.5 Cir. 1990)
     writ denied, 560 So.2d 11 (La. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Southmark Corp. v.Coopers & Lybrand,
     163 F.3d 925, 932 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

St. Paul Mercury Insurance Co. v. Williamson,
     224 F.3d 425 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Stewart v. Murphy,
      174 F.3d 530, 533 (5th Cir. 1999),
      528 U.S. 906, 120 S.Ct. 249 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tanglewood East Homeowners v. Charles-Thomas, Inc.,
      849 F.2d 1568, 1572 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Topalian v. Ehrman,
      954 F.2d 1125, 1131 (5th Cir.),
      cert. denied, 506 U.S. 825, 113 S.Ct. 82 (1992). . . . . . . . . . . . . . . . . . . . . . 15

Trizec Properties, Inc. v. United States Mineral Products Company,
      974 F.2d 602 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Washington v. Breaux,
      782 F.2d 553 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I.  <u>STATEMENT OF JURISDICTION</u>

The district court had subject matter jurisdiction in this matter, pursuant to 28 U.S.C. §1331, because the suit arose under the Constitution and the laws of the United States.

On February 1, 2013, the district court entered a Judgment denying the Defendants' Motion for Summary Judgment, which argued that prescription had run on all claims.  On March 1, 2013, the Defendants timely filed a Motion to Certify Judgment for Appeal, pursuant to 28 U.S.C. §1292, seeking permission from the district court to have this Court review the Judgment of February 1, 2013.  The district court granted the Motion to Certify Judgment for Appeal on March 4, 2013. A Petition for Permission to Appeal, pursuant to Rule 5 of the Federal Rules of the Appellate Courts, was filed with this Court on March 14, 2013.  On April 15, 2013, an Order was entered by this Court, granting permission to seek appellate review of the denial of the Motion for Summary Judgment.

## II. <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

A.    Did the district court commit legal error when it adopted the magistrate judge's Report and Recommendation which held that the Motion for Summary Judgment on Prescription should be denied due to the prior denial of a Motion to Dismiss?

B.    Does issue preclusion apply when a Motion to Dismiss is denied, such that a subsequent Motion for Summary Judgment must also be denied?

C.    Were the claims of Kent Rader prescribed at the time of the filing of suit on October 30, 2009?

## III. <u>STATEMENT OF THE CASE</u>

On October 30, 2009, Kent Rader ("Rader") filed a Complaint and alleged that he did not receive proper medical care from October of 2007 through December of 2008 while incarcerated at the Catahoula Correctional Center ("CCC"). The Complaint included several pages of allegations and argument explaining why Rader's claims were not prescribed. [R., pp. 14-29]. The Answer, filed by Defendants on January 7, 2010, affirmatively asserted that Rader's claims were prescribed. [ R., pp. 101-116].

On February 16, 2010, a Motion to Dismiss, filed with no evidence by the Defendants, argued Rader's claims were prescribed. [R., pp. 127-138]. On April 12, 2010, the motion was referred to the magistrate judge for a Report and Recommendation. [R., p. 139]. On July 9, 2010, a Report and Recommendation was

issued that recommended that the Motion to Dismiss be denied. [R., pp. 232-244]. On July 23, 2010, an Objection to the Report and Recommendation was filed by the Defendants. [R., pp. 257-273]. By Judgment of September 2, 2010, the district court rejected a portion of the Report and Recommendation, but still denied the Motion to Dismiss. [R., pp. 276-280].

Upon completion of discovery, a Motion for Summary Judgment [MSJ] was filed, seeking dismissal of all claims, based upon prescription. In support, the Defendants introduced into the record the depositions of Rader and Dr. Couvillion, his treating eye specialist, and Rader's medical records, which established that Rader was aware of the necessary facts to begin the running of prescription beginning in October, 2007. [Doc. No. 54]. Rader filed a Response [Doc. No. 58] and Defendants filed a Reply. [Doc. No. 61]. The MSJ was referred to the magistrate judge for a R&R, which was entered on December 12, 2012. [R., pp. 452-456]. The R&R did not address any legal issue or evidence raised in the MSJ. [Doc. No. 54 and Doc. No. 61]. Instead, the R&R held:

> In the case at bar, the issue of prescription was raised in defendants' Motion to Dismiss, litigated, and ruled on by the district court in a final, appealable judgment. Since this issue has already been considered and ruled on in this Court, this motion should be denied as repetitive and, pursuant to the principle of issue preclusion, should not be reconsidered in this Court.

Wherefore, defendants' Motion for Summary Judgment on the issue of prescription should be denied.

Pursuant to F.R.C.P. Rule 72(b) and 28 U.S.C. § 636(b)(1)(c), an Objection was filed to the R&R in its entirety, including the conclusion that the Judgment on the Motion to Dismiss operated to bar a subsequent MSJ, due to issue preclusion. Further, objection was made to the R&R's failure to address the MSJ, on the merits. Finally, objection was made to the R&R's failure to recommend the granting of the MSJ. [R., pp. 458-484].

On February 1, 2013, the district court entered a Judgment denying the MSJ and adopting the R&R. [R., p. 534]. The Defendants timely filed a Motion to Certify Judgment for Appeal, pursuant to 28 U.S.C. §1292, on March 1, 2013, seeking permission to have this Court review the Judgment of February 1, 2013. [R., pp. 535-545]. On March 4, 2013, an Order was issued by the district court which granted the Motion to Certify Judgment for Appeal. A Petition for Permission to Appeal was timely filed with this Court on March 14, 2013. On April 15, 2013, an Order was entered which granted permission to seek appellate review of the denial of the MSJ. [R., p. 565].

Due to the denial of the MSJ, no review has been made by any court to determine whether the facts and law support a finding that Rader's claims were

prescribed at the time of filing of suit. F.R.C.P. Rule 56 provides that the court shall

grant summary judgment if the movant shows there is no genuine dispute as to

material fact and that the movant is entitled to judgment as a matter of law. Clearly,

the dictates of F.R.C.P. Rule 56 have not been followed and Defendants have been

denied the opportunity to have a ruling on the merits of the defense of prescription.

## IV. STATEMENT OF FACTS RELEVANT TO
## THE ISSUES SUBMITTED FOR REVIEW

**A.**    **Facts**

   **1.**    **Deposition of Kent Rader**[1]

Rader (a convicted felon) testified that, while incarcerated at the Catahoula

Correctional Center ("CCC")  in October of 2007, he filled out a medical request

form seeking care and treatment for the loss of sight in his left eye. At that same

time, he also verbally reported his eyesight loss to Lt. Book, Captain Little, and Nurse

Cowart. [Doc No. 54-6, p. 52].   Rader emphatically testified that he told Nurse

Cowart, every day beginning in October of 2007, that he was going blind in his left

eye and that both eyes were getting worse over time. According to Rader, everybody,

including  Warden Book and Nurse Cowart, knew that their failure to act was causing

---

[1] The deposition testimony of Rader is submitted solely in support of the MSJ.  In the event this matter
proceeds to trial Rader's testimony will be controverted.  When evaluating the facts and evidence,
the date of filing of the Complaint, October 30, 2009, must be considered.

him more medical problems. [Doc. No. 54-6, page 83, line 5-page 85, line 1].

Either in January or February of 2008, Lt. Book brought Rader to Nurse Cowart because of his continuing complaints about his eyesight loss and the failure to provide him with medical care. The following testimony shows Rader's knowledge of all facts necessary to begin the running of prescription in January of 2008:

> Okay. Lieutenant Book got tired of looking at me with one of my eyes closed when I was looking at her all the time. She said come with me. So she brought me to Misty. She told Misty to send him to the hospital. So a couple of days later I finally went to the hospital.
>
> That's where I was diagnosed with histoplasmosis. That was – they brought me to Huey P. Long over there on – where the air airport – where England used to be, the air force base used to be. They couldn't do anything to treat histoplasmosis there, so they referred me to a specialist at LSU Medical Center in Shreveport. [Doc. No. 54-6, page 55, line 18 - page  56, line 19].

Rader testified that he had two visits to Huey P. Long Hospital (HPL) January 16, 2008, and on January 18, 2008 and that: "they had to take pictures and dilate my eyes and give me an injection of some sort of dye to see the blood vessels inside of my eyes and stuff." [Doc. No. 54-6, p. 22 of 59, p. 89, line 23, p. 90, line 1]. Rader ultimately agreed that his first visit to HPL occurred on January 16, 2008. [Doc. No. 54-6, pp. 23-24 of 59, pp. 89-91].

By January 18, 2008, the second visit to HPL, Rader knew he had been referred
to LSU-S for care and treatment for POHS. [Doc. No. 54-6, p. 15 of 59,  pp. 55-56
and p. 99].  Rader expected that it would happen immediately. [Doc. No. 54-6, p. 26
of 59, p. 100].  His concern after both hospital visits to HPL in January of 2008 was
that he was going blind.  As time passed, he became more and more scared, as both
of his eyes began "going away". [Doc. No. 54-6, p. 26 of 59, p. 98].  He knew that he
had been referred to LSU-Shreveport Medical Center (LSU-S) for care and treatment,
he just did not know when he was to go.  He told Warden Book that he had been
referred to LSU-S, but Warden Book just joked about it. [Doc. No. 54-6, 26-27 of 59,
p. 100, line 23 - p.103, line 11].  Rader further testified that he gave to Mr. Stott
(another medic at the CCC) a second medical request form in October of 2008, and
that:

> Q.   All right.  Did you hope that you would have a different outcome
>        with Mr. Stott than you did with Misty?
> A.   Yes, sir.
> Q.   All right.  And why did you have that hope?
> A.   Because I was going blind and Stott's decent.
> Q.   Okay.  Now what did Stott do for you?
> A.   He said I'll get you in as soon as possible, and he sent me a few
>        days later. [Doc. No. 54-6, p. 23 of 59, p. 87, line 16, p. 88, line
>        1].

Finally, Rader testified that, upon his first visit to LSU-S, on October 22, 2008,
he was examined, and met with the eye specialists. [Doc. No. 54-6, p. 27 of 59,  pp.

104-105 and p. 27 of 59, p. 123]. According to Rader the eye specialists told him:

> We're going to have to start your injections of Avastin. They told me exactly where it would - - they told me I do have Histo (POHS). [Doc. No. 54-6, p. 27 of 59, p. 105, lines 17-19].

Also on October 22, 2008, Rader had the following exchange, with his doctors:

> I asked the doctors if it could have been prevented, and they said yes. It could have been prevented if you would have gotten here sooner. Well, I wasn't here sooner because they wouldn't send me sooner. Was I ever on a waiting list? No, we don't have a waiting list. You could have been seen at any time. For all they had to do is - - and I'm in tears at this point - - so all they had to do was bring me up here and y'all could have fixed this. Yep, could have fixed this. Sorry. Now there was nothing they could do except try their best. [Doc. No. 54-6, p. 28 of 59, p. 106, lines 12-23].

Further proof that Rader knew that he had suffered injury and also knew the causal connection between his injury and defendants' actions or inactions, is shown by Rader's report of his conversation with Chaplain Tucker, the Chaplain for CCC. Rader testified that he talked with Chaplain Tucker about his eye and medical problems and the need to secure additional medical treatment. Chaplain Tucker, who suffered from a similar eye problem, advised Rader to file suit over his failure to receive proper medical care. According to Rader, the conversation occurred a day or two before he was transported to LSU-S. Thus, this conversation occurred on or about October 20, 2008. [Doc. No. 54-6, p. 25 of 59, pp. 96-97, p. 31-32 of 59, pp. 119-123, and p. 124, line 13-14].

Based upon the above testimony of Rader, it is apparent that he knew, beginning in October of 2007, that he was going blind in his left eye and that both eyes were getting worse over time. Rader was taken to HPL, on January 16 and 18, 2008, where he was examined by eye doctors and was told that it was likely that he had POHS. Rader also was told that he was referred to LSU-S for care and treatment. On October 22, 2008, Rader was examined at LSU-S and immediately began treatment for POHS. This testimony, without any other evidence, establishes that Rader waited more than one year after he had the requisite knowledge of the lack of medical care and the connection between the lack of medical care and the defendants' actions or inactions to trigger the running of prescription.

2.    **Hospital Records**

The HPL records confirm that, on January 16, 2008, Rader was seen for an evaluation for the decrease in vision in his left eye, over the last two to three months. On January 18, 2008, Rader returned to HPL for additional testing. A report of the January 18, 2008 examination stated that Rader had "likely POHS." [See HPL records in Rader's Medical File at the CCC, Doc. No. 54-7, pp.1-2 of 2, pp. 184-185]. On October 22, 2008, Rader was examined at LSU-S and the diagnosis of POHS was again confirmed. [LSU-S records, Doc. No. 54-8, pp. 48-49 of 50, pp. 47-48].

### 3.    **Deposition of John T. Couvillion**

Dr. Couvillion is Rader's current treating physician and eye specialist.  During the course of Dr. Couvillion's deposition, it was learned that, early in his career, he had worked in the Charity Hospital system, including at HPL. [Deposition of Dr. John Couvillion, taken on November 30, 2011, Doc. No. 54-9, pp. 8-9 of 43, pp. 25-26]. Dr. Couvillion testified that he had spent two to three months, twice a year, at HPL as the eye specialist.  Dr. Couvillion's responsibilities while working at HPL included the care and treatment of inmates who were in need of eye care. [Doc. No. 54-9, p. 9 of 43,  p. 26].

Dr. Couvillion received the medical records on Rader and was able to read and explain their contents.  After Dr. Couvillion read the records of January 18, 2008 from HPL, he testified that the doctor noted that Rader probably had POHS. [Doc. No. 54-9, p. 10 of 43,  pp. 30-31].  Dr. Couvillion also testified that the LSU-S records on Rader, dated October 22, 2008, showed that Rader was seen by the retina specialist and began treatment for POHS on that date, with injections of Avastin. [Doc. No. 54-9, p. 10 of 43,  p. 32].

### 4.    **Catahoula Correctional Center Sick Call Request Form**

During the course of Rader's deposition, he was shown a CCC Sick Call Request Form, dated October 20, 2008, and Rader admitted that he prepared the form

and turned it in to secure medical care and treatment. [Doc. No. 54-6, p. 32 of 59, p. 123].  After turning in the form, Rader was transported to LSU-S, on October 22, 2008, for care and treatment. [Doc. No. 54-6, p. 32 of 59, p. 123,  line 16].  This form, written, dated and signed by Rader, states:

> I need to speak w/you about my eyes please.  I'm going blind.  My last eye appointment was 1-4-08.  I was suppose[sic] to go see a specialist in Shreveport and still haven't gone.  I need to see you today please. [Doc. No. 54-10, Catahoula Correctional Center Sick Call Request Form, dated 10-20-08].

## V.  <u>SUMMARY OF THE ARGUMENT</u>

The Defendants filed a Motion to Dismiss and argued that all claims made in the Complaint were prescribed.  No evidence was submitted in support of the Motion to Dismiss; thus, it was not converted to a Motion for Summary Judgment.  Ultimately, the Motion to Dismiss was denied.   After extensive discovery was conducted, a Motion for Summary Judgment was filed by the Defendants, supported by deposition testimony and Rader's medical records.  This Motion for Summary Judgment argued prescription, as well.  A Judgment, adopted the magistrate judge's Report and Recommendation (R&R), and denied the Motion for Summary Judgment. The sole basis for the denial of the Motion for Summary Judgment was the magistrate judge's conclusion that issue preclusion required that the Motion for Summary Judgment be denied because the Motion to Dismiss had previously been denied.

Thus, there has never been a ruling on the merits of the Motion for Summary Judgment. Once the Motion for Summary Judgment and the Memorandum in Support of the Motion for Summary Judgment, with supporting exhibits, are finally reviewed on the merits, all claims against all Defendants should be dismissed, with full prejudice.

## VI.  ARGUMENT ON ISSUE PRECLUSION

The district court denied the MSJ, based upon the R&R, which stated:

Defendants' motion for summary judgment is filed solely on the ground of prescription. However, in his ruling on defendants' motion to dismiss, the district judge held that Rader's cause of action based on injury to his vision accrued no later than December 31, 2008, and therefore his action, filed on October 30, 2009, was filed timely (Doc. 39). The defendants are re-urging in their motion for summary judgment an issue the district court has already ruled on.

According to the doctrine of collateral estoppel, or issue preclusion, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194 (1970). Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision. ***The relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings.*** Pace v. Bogalusa City School Bd., 403 F.3d 272, 290 (5th Cir.), cert. den., 546 U.S. 933, 126 S.Ct. 416 (2005), citing Southmark Corp. v. Coopers & Lybrand (In re: Southmark Corp.), 163 F.3d 925, 932 (5th Cir. 1999), and RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1291 (5th Cir. 1995).

> In the case at bar, the issue of prescription was raised in defendants' motion to dismiss, litigated, and ruled on by the district court in a final, appealable judgment. Since this issue has already been considered and ruled on in this court, this motion should be denied as repetitive and, pursuant to the principle of issue preclusion, should not be reconsidered in this court.
>
> Therefore, defendants' motion for summary judgment on the issue of prescription should be denied.
> [R., pp. 452-456] [emphasis added].

The above finding in the R&R is a correct statement of the law as to issue preclusion but the law was misapplied when it was recommended that the MSJ be denied because the Motion to Dismiss had already addressed the same issue.

The standards that are applied to a motion to dismiss, pursuant to F.R.C.P. Rule 12(b)(6), and a motion for summary judgment, made under F.R.C.P. Rule 56, are well known and recognized by this Court. The distinction between the two standards is described in St. Paul Mercury Insurance Co. v. Williamson, 224 F.3d 425, 440 (5th Cir. 2000), where the following observation was made:

> We review both a motion to dismiss and a motion for summary judgment under a de novo standard of review. In the former, the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. In the latter, we go beyond the pleadings to determine whether there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The distinction between two standards was also noted and properly applied in the

previous decisions of the magistrate judge and the district court, in the July 9, 2010

Report and Recommendation and September 2, 2010 Judgment on the Defendants'

Motion to Dismiss and on co-defendant's motion for summary judgment. [R., pp.

232-244 and pp. 276-280] This is seen in the magistrate judge's Report and

Recommendation of July 9, 2010 which states:

    1.    <u>LADPSC Motion to Dismiss</u>

> The LADPSC filed a motion to dismiss Rader's suit for lack of subject matter jurisdiction (Doc. 24). Rader has not filed an opposition to that motion.

> A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988); <u>Doe v. U.S. Dept. Of Justice</u>, 753 F.2d 1092, 1101 (D.C. Cir. 1985). For the purposes of such a motion, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. <u>Doe</u>, 753 F.2d at 1101. A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. <u>Crowe v. Henry</u>, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Hirras v. National Railroad Passenger Corp.</u>, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); <u>Doe</u>, 753 F.2d at 1102. On motion to dismiss, it is presumed that general allegations embrace the specific facts that are necessary to support the claim.

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

...

2.    Motion for Summary Judgment by CPPJ

The CPPJ filed a motion for summary judgment (Doc. 20) contending it did not own the CCC building during the relevant period and does not own it now, did not employ or have custody of anyone at the CCC, and did not operate the CCC.

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, *mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.* Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992). [R., pp. 234-238]

The above discussion shows that neither the identical legal issue nor the

identical factual issue have not been previously adjudicated or actually litigated. Certainly, F.R.C.P. Rule 56 does not provide an exception to the motion for summary judgment standard that is contingent upon and considers the outcome of a F.R.C.P. Rule 12(b)(6) motion. In addition, the Judgment on the Motion to Dismiss did not find any "facts," it only found that Rader's allegations were sufficient to defeat the Motion to Dismiss.

Furthermore, the July 9, 2010 Report and Recommendation cited Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194 (1970), for the principle that, once there has been a valid and final judgment, the same issue cannot be litigated between the same parties in any future lawsuit. However, in Ashe, supra, the issue was the effect of an acquittal of criminal charges on subsequent criminal charges, when the second set of criminal charges arose out of the same facts and circumstances as the original criminal charges. Based upon the Fifth Amendment and double jeopardy, the Supreme Court held that, once a jury had determined that there was a reasonable doubt that the defendant was guilty, the state was prohibited from a second prosecution on crimes arising from the same facts and circumstances. Clearly, Ashe, supra, does not support the conclusion that a ruling on a motion to dismiss requires that a subsequent motion for summary judgment be denied. Furthermore, none of the other cases cited in the R&R concern a motion to dismiss, decided upon the face of

the pleadings, and a motion for summary judgment, which was supported by substantial deposition testimony and extensive medical records.

A ruling on a motion to dismiss and a motion for summary judgment are not made with the same legal standards. Furthermore, the identical issues were not previously adjudicated nor were the issues actually litigated. Accordingly, issue preclusion cannot be applied to deny the MSJ. The district court committed legal error when it adopted the R&R and failed to rule on the merits of the MSJ.

## VII. <u>ARGUMENT ON PRESCRIPTION</u>

The Complaint was filed on October 30, 2009, over actions and inactions that began in October of 2007. [R., pp. 14-29]. It is apparent that Rader was concerned that his claims were prescribed, at the time of the filing of suit, because two pages of the Complaint were devoted to explaining how and why his claims were not prescribed. [R., pp. 27-28]. In the Answer, filed on January 7, 2010, Defendants asserted the following:

> Defendants submit that all claims and causes of action under federal and state law are prescribed; thus, the entire claim is frivolous and without basis in fact or law. [R., p. 114].

> Shortly thereafter, on February 16, 2010, a Motion to Dismiss was filed, again

asserting prescription.[2] [R., pp. 127-138].    On July 9, 2010, a Report and

Recommendation was made by the magistrate judge, recommending that the Motion

to Dismiss be denied. [R., p. 232].  Subsequently, on July 23, 2010, an Objection was

filed to the entirety of the July 9, 2010 Report and Recommendation. [R., pp. 257-

268].

On September 2, 2010, a Judgment was entered by the district court, which

found that the magistrate judge's legal analysis concerning the denial of the Motion

to Dismiss was incorrect, but denied the Motion to Dismiss, on other grounds. [R.,

pp. 276-280].

In reaching this result, the district court made several observations concerning

the allegations made in the Complaint.  These observations included that;

1.    Rader was informed, during a visit to Dr. Tabe and Dr. Mindeloa in November or December of 2008, for the first time, that his vision was impaired by a condition known as ocular histoplasmosis which would have been curable if treated timely;

2.    Rader was not apprised of his diagnosis and of the effect of delayed treatment until much later;

3.    Defendants offered no evidence that the plaintiff was aware of his diagnosis at any point prior to November or December of 2008.

---

[2]

As noted by the district court, the Defendants submitted no evidence in support of the Motion to Dismiss; thus, it was not converted to a Motion for Summary Judgment.[R., pp. 279-280].

Based upon the above analysis of Rader's Complaint, viewed in a light most favorable to Rader, the district court denied the Motion to Dismiss with the following statement:

> Accordingly, we find that plaintiff's cause of action based on injury to his vision accrued no later than December 31, 2008. Plaintiff's suit, filed October 30, 2009, is timely. [R., pp. 279-280].

Once discovery was commenced, one of the principal areas of inquiry was developing facts to prove or disprove the dates set out in the Complaint. By the time discovery was completed, the allegations of the Complaint had been disproved. The actual chronology of Rader's diagnosis, treatment and knowledge is as follows:

1.    In October of 2007 Rader complained to all Defendants that he was going blind in his left eye and that both eyes were getting worse over time;

2.    On January 16, 2008 Rader was examined at Huey P. Long Medical Center (HPL);

3.    On January 18, 2008 Rader was again examined at HPL, and was referred to LSU-Shreveport Medical Center (LSU-S) for care and treatment of Presumed Ocular Histoplasmosis Syndrome (POHS);[3]

---

[3]

In his deposition [Doc. No. 54-9], Dr. Couvillion refers to Rader's condition as Presumed Ocular Histoplasmosis Syndrome [p.10 of 43, p. 31], Ocular Histoplasmosis [pp. 5, 6, 10, 12 of 43 pp. 13, 16, 33 and 38], Ocular Histo [p. 7 of 43, p. 19], Histo [p. 10 of 43, p. 31], and POHS [pp. 6 & 10 of 43, pp. 14 and 30]. Thus, it is correct to refer to Rader's condition as any of the above. For ease of association, "POHS" is used throughout.

4.   While Rader was awaiting transport to LSU-S for care and treatment of POHS by an eye specialist from January 2008 until October of 2008 he complained, every day, of his lack of and need for medical care;

5.   On October 22, 2008 Rader was again examined by doctors, this time at LSU-S, who began care and treatment for POHS;

6.   On October 22, 2008 the doctors also told him that if he would have received care and treatment, sooner, it would have prevented his eye problems.

Thus, discovery disproved the factual allegations made in the Complaint, which the district court had found to be sufficient to defeat the Motion to Dismiss. However, due to the R&R and the district court's ruling, the evidence and factual conclusions arising from the evidence filed in support of the MSJ have never been addressed. It is urged that this Court take up the defense of prescription, on the merits, because the record is now complete. To send this matter back to the district court would again delay a ruling on the MSJ. Thus, if the claims are prescribed then a ruling by this Court would conclude any further litigation, including a trial on the merits.

The importance of the review of the denial of the MSJ, by this Court, is also evident in the Order entered by the district court, which stated:

> **ORDERED** that defendants' motion to certify judgment for immediate appeal is **GRANTED**, and that court's prior Judgment of February 1,

2013 denying defendants' Motion for Summary Judgment is hereby certified for immediate appeal pursuant to 28 U.S.C. §1292(b) on the basis that the issues presented in the underlying motion involve a controlling question of law as to which there is substantial ground for difference of opinion in that an immediate appeal from the Order may materially advance the ultimate termination of the litigation.[R., p. 559]

Accordingly, this Court should next consider the merits of the MSJ as to prescription and dismiss all of Rader's claims.

### 1.    Federal Law

Because 42 U.S.C. § 1983 has no statute of limitations, the prescriptive period for such a claim is set by state law.  In Louisiana there is a one year prescriptive period for all personal injury claims, including civil rights claims.  Cruz v. Louisiana, Dept. of Public Safety and Corrections, 528 F.3d 375 (5th Cir. 2008);  Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999); McGregor v. Louisiana State University, 3 F.3d 850 (5th Cir. 1993), cert. denied, 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994); Elzy v. Robinson, 868 F.2d 793 (5th Cir. 1990); Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1980); Washington v. Breaux, 782 F.2d 553 (5th Cir. 1986); Doucette v. Barthelemy, 598 So.2d 600 (La. App. 4 Cir. 1992) and La.C.C.Art. 3492.[4]

However, federal courts look to federal law to determine when a civil rights action accrues.  Jackson v. Johnson, 950 F.2d 263 (5th Cir. 1992) and Harris, supra,

---

[4] While the discussion in this section is principally directed to the federal law claims, the entire analysis and discussion applies with equal force to all Louisiana law claims.

and <u>Cruz</u>, supra.  A § 1983 action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action.  <u>In re Monumental Inc. Co.</u>, 365 F.3d 408 (5th Cir. 2004), cert. denied, 543 U.S. 870, 125 S.Ct. 777, 160 L.Ed.11 (2004), and <u>Harris</u>, supra.  The determination of when Rader knew or should have known of the existence of a possible cause of action is determined by the following factors:

1.     The existence of the injury; and
2.     Causation, that is, a connection between the injury and the defendants' actions.

<u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 516 (5th Cir. 1995).

It is also well-settled that, if a claim has prescribed on its face, then it is the plaintiff's burden to establish why the claim has not prescribed.  <u>Kling Realty Co., Inc. v. Chevron USA, Inc.</u>, 575 F.3d 510 (5th Cir. 2009); <u>Barbarin v. Wal-Mart Stores</u>, 01-669 (La. App. 5 Cir. 11/27/01), 804 So.2d 116; <u>Restrepo v. Fortunato</u>, 556 So.2d 1362 (La.App.5 Cir. 1990), writ denied, 560 So.2d 11 (La. 1990); and <u>Trizec Properties, Inc. v. United States Mineral Products Company</u>, 974 F.2d 602 (5th Cir. 1992).

A proper application of the law on inmate medical claims is found in <u>Jackson v. E. A. Conway Medical Center</u>, ("Jackson I"), 2009 WL 159732 (W.D. La. Jan. 22, 2009), and <u>Jackson v. E. A. Conway Medical Center</u>, ("Jackson II"), 2009 WL

2512846 (W.D. La. Aug. 17, 2009), both of which arose out of the same facts and circumstances and were dismissed through motions to dismiss.  In both <u>Jackson I</u> and <u>Jackson II</u>, the district court held that Jackson filed his lawsuit more than one year after he had the requisite knowledge of the claim

A summary of the facts and time-line of the claims at issue in both opinions were that:

1.    March 1, 2006 - Jackson suffered a heart attack while incarcerated;

2.    March 6, 2006 - Jackson was transported to E. A. Conway Medical Center for treatment, and then to David Wade Correctional Center;

3.    March 7, 2006 - Jackson was transferred to Forcht-Wade Correctional Center, where he remained until April 4, 2006;

4.    April 5, 2006 - Jackson was transported to Winn Correctional Center, where he was sent outside to work in the heat.

5.    April 19, 2006 - Jackson was again transported to E. A. Conway Medical Center for additional medical tests;

6.    April 19, 2006 - Jackson was returned to Winn Correctional Center;

7.    March 1, 2006 and August 10, 2006 - Jackson requested a "heart cath";

8.    November 17, 2006 - Jackson finally received his "heart cath"; and

9.    November, 2007 - Complaint filed.

In <u>Jackson I</u>, supra, the district court initially noted that the statute of limitations begins to run "the moment the plaintiff becomes aware that he has

suffered injury or has sufficient information to know that he has been injured."

Jackson I, at p. 2, quoting Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir.

2001).  The  district court then went on to hold, in Jackson I, at p. 2:

> Construing Jackson's allegations in the light most favorable to him and taking all facts pleaded in his complaint as true, it is clear that any claim against Warden Batson has prescribed.  Jackson was sent to Forcht Wade on March 6, 2006. He claims at that point he was not given medication or tests.  It was on this date he was aware that he had suffered an injury sufficient to put him on notice to file suit.  He was transferred to another facility on April 4, 2006.  Jackson did not file a complaint until November of 2007, well over a year past the relevant dates that he was aware that he was suffering an alleged injury.
>
> Jackson contends that he did not become aware of his injury until he underwent a heart catheter on November 17, 2006.  He asserts that on that date, he was "advised that as a direct result of the delay in medical treatment, i.e., not having the heart cath performed sooner, the damage his heart had sustained was now irreversible because most of the heart tissue was already dead."  Record Document 1 at 6.  Notably, however, Jackson also contends that "between March 1, 2006 and August 10, 2006 Petitioner repeatedly requested that the heart cath be performed at the earliest possible date due to chronic chest pain." *Id.*  Therefore, by Jackson's own allegations, he was aware during his incarceration that he was not receiving his medication or additional medical testing sufficient to put him on notice that he was suffering an injury.  Federal law regarding the accrual of a claim and Louisiana's statute of limitations result in any claim by Jackson against Warden Batson being untimely.  Accordingly, Warden Batson's motion to dismiss (Record Document 10) is **GRANTED**.

Yet another district court case which shows that Rader's claims are prescribed is Harrell v. Edwards, 05-4002 (E.D. La. 2007), 2007 WL 734387, where an inmate fell in jail and claimed that he was denied appropriate medical care. In concluding that the claim was prescribed, the district court, in Harrell, at p. 3, wrote:

> The movants contend that Harrell's complaint should be dismissed because he did not timely pursue his claims against them. They argue that Harrell alleges that he was seen by Dr. Mauterer and Nurse Charlotte on August 4, 2004. The defendants contend that it is the treatment received at this visit about which Harrell complains. They argue, however, that Harrell did not file his lawsuit until August 23, 2005, and that the complaint was signed on August 15, 2005, both dates falling after the applicable one-year prescriptive period ran.
>
> * * *
>
> Applying the foregoing, Harrell's §1983 claims accrued at the latest on August 4, 2004, when he knew or had reason to know that he did not and would not receive the x-rays, medication or treatment he wanted from the defendants. Harrell admits that this is the day on which he should have received what he believes to have been more appropriate medical treatment.
>
> * * *
>
> Harrell was required to file his §1983 suit arising out of the alleged medical indifference, within one year, or no later than August 4, 2005. Harrell's claims arising out of the alleged deliberate indifference to his medical needs is considered filed on August 15, 2005, under the applicable "mailbox rule." Because the petition was untimely filed,

the defendants' motions should be granted and Harrell's claims dismissed with prejudice as prescribed.

The factual allegations made by the plaintiffs in <u>Jackson I</u>, supra, and <u>Jackson II</u>, supra, and <u>Harrell</u>, supra, are indistinguishable from the facts presented in Rader's claims. This is seen in Rader's deposition where he testified that:

1.    October, 2007 - Rader wrote a medical request seeking care and treatment for the loss of sight in his left eye. He also verbally reported the medical problem to Nurse Cowart and other corrections officials;

2.    From October, 2007 through January, 2008 - Rader continually complained to Nurse Cowart about his eyesight loss;

3.    January 16, 2008 - Examined at HPL;

4.    January 18, 2008 - Examined at HPL and it was determined that it was likely that he had POHS, so Rader was referred to a specialist at LSU-S;

5.    October 20, 2008 - Rader advised Chaplin Tucker of the facts and circumstances of his problems and Tucker advised Rader to sue over his medical care and treatment;

6.    October 20, 2008 - Rader turned in handwritten request for medical care that stated he was going blind and knew he needed medical care; and

7.    October 22, 2008 - LSU-S confirmed that Rader had POHS, began treatment with injections, and Rader was told by his doctors that had he received earlier treatment the outcome would, likely, have been different.

Applying any of the above dates to the date of filing of the lawsuit, October 30, 2009,

leads to the inescapable conclusion that Rader's claims were prescribed at the time

of filing and must be dismissed, with full prejudice.

### 2.    Louisiana Law

In Luckett v. Delta Airlines, Inc., 171 F.3d 295 (5th Cir. 1999), the Fifth Circuit

ably summarized Louisiana law on prescription.   In Luckett, at pp. 300-301, the

following discussion was given:

> The prescriptive period begins when a potential plaintiff discovers or
> should have discovered the delict, the damage, and the relationship
> between the two. (citation omitted).  Constructive knowledge is 'more
> than apprehension that something might be wrong but less than actual
> knowledge.'   (citation omitted).    Thus, the prescriptive period
> commenced when Luckett knew or should have known of the wrongful
> act, her damages, and their connection.
> . . .
> The commencement of prescription does not necessarily wait for the
> pronouncement of a victim's physician or of an expert.  (citation
> omitted). ... In other words, the prescriptive period commences when
> there is enough notice to call for an inquiry about a claim, not when an
> inquiry reveals the facts or evidence that specifically outline the claim.
> (citation omitted).  To decide otherwise would be to say that a plaintiff
> must *know* the cause of her damage, taking away the constructive
> knowledge component of the rule.

Under the Fifth Circuit jurisprudence, as set-out in above, the prescriptive period for

Rader's claim began in October of 2007.  Furthermore, it is unnecessary for a formal

diagnosis to be made, before prescription commenced.  However, that milestone was

reached on January 18, 2008 at HPL and again on October 22, 2008 when Rader visited LSU-S and spoke with his doctors.  Accordingly, all Louisiana law claims were prescribed at the time of filing the Complaint, on October 30, 2009.

## VIII.  CONCLUSION

The effect of the Report & Recommendation, as adopted by the Judgment, was to deny the Defendants the review and ruling mandated by F.R.C.P. Rule 56.  As a properly supported Motion for Summary Judgment was filed, the district court's obligation was to grant summary judgment, unless there was a genuine dispute of material fact or because the Defendants were not entitled to judgment as a matter of law.  The Report & Recommendation and Judgment were issued in error, as a matter of law, because issue preclusion does not apply when a denial of a motion to dismiss is followed by a properly supported motion for summary judgment.  Accordingly, the merits of the Motion for Summary Judgment must be addressed.

Prescription has been an issue since the moment of filing of the Complaint, as well as through the Answer and two dispositive motions.  Now, almost six years after the operative facts began, and almost four years after the suit was filed, Defendants are still seeking a ruling that all claims of Rader were prescribed at the time of filing of suit.  The deposition testimony of Rader, together with his medical records and the testimony of his treating physician, have conclusively established that Rader had

knowledge of all of the elements necessary for prescription to begin to run, beginning in October of 2007, extending through January of 2008 and ending on October 22, 2008.   Rader's knowledge, when considered with the date of the filing of the Complaint, October 30, 2009, show that this matter is prescribed.  Accordingly, the Motion for Summary Judgment should be granted, dismissing all claims, with full prejudice.

Respectfully submitted:
PROVOSTY, SADLER, deLAUNAY
FIORENZA & SOBEL, APC

By: /s/ H. Bradford Calvit
H. BRADFORD CALVIT (#18158)
bcalvit@provosty.com
934 Third Street, Suite 800
P.O. Drawer 1791
Alexandria, LA 71309-1791
P: 318/445-3631 F: 318/445-9377

ATTORNEYS FOR
DEFENDANTS-APPELLANTS
LASALLE MANAGEMENT COMPANY,
L.L.C., WARDEN PAT BOOK, LIEUTENANT
BOOK, SHERIFF JAMES GLEN KELLY
and MISTY COWART

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY,** that a copy of the above and foregoing Original Brief on behalf of Defendants-Appellants, LaSalle Management Company, L.L.C., Warden Pat Book, Lieutenant Book, Sheriff James Glen Kelly and Misty Cowart, has this day been served upon all counsel of record in this proceeding by electronically filing the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the below listed parties. Further, that a hard copy of said Original Brief has been mailed to any party requesting same by depositing a copy via the U.S. Postal Service, postage prepaid and properly addressed.

| | |
|---|---|
| John Christopher Alexander, Sr. | Timothy R. Richardson |
| Alexander Law Firm | Usry, Weeks & Matthews |
| P. O. Box 83101 | 1615 Poydras Street, Suite 1250 |
| Baton Rouge, Louisiana 70884 | New Orleans, Louisiana 70112 |
| (225) 761-9456 | (504) 592-4600 |
| Attorneys for KENT RADER | Attorneys for SHERIFF JAMES GLEN KELLY |
| | |
| Honorable James T. Trimble, Jr. | Honorable James D. Kirk |
| United States District Judge | United States Magistrate Judge |
| Western District of Louisiana | Western District of Louisiana |
| Alexandria Division | Alexandria Division |
| 515 Murray Street | 515 Murray Street |
| Alexandria, Louisiana 71301 | Alexandria, Louisiana 71301 |

I further certify that I have forwarded the foregoing document via facsimile and/or first-class mail to the following non-CM/ECF participants: None.

/s/ H. Bradford Calvit
_____H. BRADFORD CALVIT

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned counsel certifies this Original Brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1.    Exclusive of exempted portions in 5th Cir. R. 32.2.7(b)(3), the Brief contains <u>7,353</u> words printed in a proportionally spaced typeface.

2.    The Brief has been prepared in a proportionally spaced serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Corel WordPerfect X5 software.

3.    The undersigned is also providing an electronic version of the Brief and a copy of the Word or Line Printout as an Addendum to the Certificate of Compliance.

4.    The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.

Respectfully submitted:
PROVOSTY, SADLER, deLAUNAY
FIORENZA & SOBEL, APC

By: /s/ H. Bradford Calvit
H. BRADFORD CALVIT (#18158)
bcalvit@provosty.com
934 Third Street, Suite 800
P.O. Drawer 1791
Alexandria, LA 71309-1791
P: 318/445-3631 F: 318/445-9377

ATTORNEYS FOR
DEFENDANTS-APPELLANTS
LaSALLE MANAGEMENT COMPANY,
L.L.C., WARDEN PAT BOOK, LIEUTENANT
BOOK, SHERIFF JAMES GLEN KELLY and
MISTY COWART